UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| | ) | |
| v. | ) | No. 3:20-00161 |
| | ) | JUDGE TRAUGER |
| | ) | |
| WESLEY SOMERS | ) | |

## POSITION OF DEFENDANT REGARDING THE PRESENTENCE REPORT

Wesley Somers, through undersigned counsel, and pursuant to Fed. R. Crim. P. 32 and LCrR32.01(c)(4), hereby notifies this Court that he has reviewed the Presentence Investigation Report (PSR) with counsel. Mr. Somers has one objection to the advisory guideline calculation contained in the PSR. He objects to the calculation of a Base Offense Level of **24**, set forth in the PSR at ¶ 18, for "destruction or attempted destruction" of City Hall, pursuant to U.S.S.G. § 2K1.4(a)(1)(B). Based on the facts of this case, a Base Offense Level of **20**, pursuant to U.S.S.G. 2K1.4(a)(2)(C), is the correct calculation because the offense involved the "endangerment" of City Hall.

A.   **The Base Offense Level should be 20.**

During a protest on May 30, 2020, regarding the police murder of George Floyd in Minneapolis, Mr. Somers caused damage to a state or government facility, City Hall, by placing a burning object, some type of poster board, into a window from outside the building. (PSR at ¶ 6.) Mr. Somers also sprayed some spray paint into the fire and broke windows with a long object. (PSR at ¶¶ 5-6.) Other

individuals also broke windows, sprayed graffiti, and lit fires that caused damage to City Hall. (PSR at ¶¶ 4, 5, 10.) The PSR has assigned a base offense level of 24 under § 2K1.4(a)(1) because "the offense involved the destruction or attempted destruction…. of a state government building that was a place of public use." (PSR at ¶ 18.) However, the base offense levels should be **20**, rather than 24, because the fires "*endangered*" a place of public use. U.S.S.G. § 2K1.4(a)(2) (italics added).

The damage caused at City Hall by the protestors resulted in a cost of $610,094 in water and fire damage. Much of the damage was water damage, and impacted blinds, carpeting, walls, and office equipment in a relatively small portion of the building. The damage caused only partial disruption of operations at City Hall. City Hall is a large, multi-story, concrete and marble building. The limited fires did not involve the attempted destruction of this building, and there was no chance that the building would be destroyed by the actions of Mr. Somers. Also, the financial damage caused at City Hall, $610,094, represents only a fraction of the financial value of the building, which is worth tens of millions of dollars in downtown Nashville.

The PSR recommends that the Court find that Mr. Somers' crime involved the destruction or attempted destruction of City Hall. That recommendation is in error. The 4-level "destruction or attempted destruction" enhancement was never intended to apply to a fire and damage as limited as the one at City Hall.

In the alternative, even if the Court determines that the 4-level enhancement applies, that enhancement is, insofar as it relates to Mr. Somers' offense, the

2

product of unsound and unexplained policy decisions, and thus it should be disregarded. *See Kimbrough v. United States*, 552 U.S. 85 (2007).

### B. The "destruction or attempted destruction" enhancement, which creates a base offense level of 24, does not apply to this case.

Mr. Somers makes two arguments—one about the scope of the 4-level enhancement as written, and one about its soundness if interpreted to apply to his crimes. Each argument is best understood considering the development of the current guideline.

#### 1. Background to the current U.S.S.G. § 2K1.4(a)

As of 1989, the arson guideline, U.S.S.G. § 2K1.4, assigned an offense level of 24 to a crime in which the defendant "knowingly created a substantial risk of death or serious bodily injury," and it assigned an offense level of 18 for a crime involving "destruction or attempted destruction of a residence." U.S.S.G. §§ 2K1.4(a), (b) (1989). It did so by imposing a base offense level of 6, which was increased by enhancements of, respectively, 18 and 12 levels. *Id.* These initial offense levels were based on the Sentencing Commission's empiric study of sentencing practices up to that date and designed to reflect those practices. U.S.S.G. § Ch. 1, Pt. A, n.3. Simply put, those initial offense levels triggered a harsh starting point of 24 levels only if human life was lost or endangered. Meanwhile, the crime of setting a relatively small fire inside a non-residential building would trigger an offense level of 6, since the enhancement for destruction to property applied only to residences.

3

In 1990, the Sentencing Commission made the first of two relevant rounds of amendments to § 2K1.4. At that time, the Commission effectively left the base offense level at 6. *See* U.S.S.G. §§ 2K1.4(a)(4), 2B1.3 (1990). But increased the base offense level for the destruction or attempted destruction of a dwelling, making its base offense level 24—the same as the level for knowingly creating a substantial risk of death or serious bodily injury. U.S.S.G. § 2K1.4(a)(1). And it assigned a base offense level of 20 to: (1) "endanger[ing]" a dwelling, or (2) the destruction or attempted destruction of a non-dwelling structure.

This change was accomplished through Amendment 330. U.S.S.G. App. C, Amend. 330 (Nov. 1, 1990.) The Commission did not explain why it decided to suddenly treat some property-damage fires (those involving destruction of a dwelling) as harshly as those that cost or endangered human life. *Id.* Nor did the Commission explain why it decided to treat so harshly—with a 20-level base offense level—a property-damage fire that involved destruction to a non-dwelling structure. *Id.* It just said it was doing so without any justification whatsoever.

Its explanation, however, signaled that the "destruction" and "endanger" standards were not to be applied loosely. The Commission stated: "Review of presentence reports indicates that many arson cases involve 'malicious mischief,' i.e., minor property damage under circumstances that do not present an appreciable danger." U.S.S.G. App. C, Amend. 330, Background. The Commission indicated that the lowest base offense level of 6 still applied to such crimes of "malicious mischief" that caused relatively minor "property damage." Hence, according to the

4

Commission the "destruction" standard, as well as the "endanger" standard, each required proof of substantial damage, not just "minor property damage."

The Commission made the second relevant change in 2002 and 2003 in response to the PATRIOT Act and to ensure that the 24-level base offense level applied to terrorism crimes prohibited under two statutes: (1) 18 U.S.C. § 2332a, which criminalized the use of any "weapon of mass destruction," and (2) 18 U.S.C. § 1993, which criminalized terrorist attacks on mass transportation systems. U.S.S.G. App. C, Amend. 637 (Nov. 1, 2002); 68 Fed. Reg. 26960, 26971 (May 16, 2003). After this round of amendments, § 2K1.4 essentially took its current form in which an offense involving the destruction of a non-dwelling structure carries a base offense level of 24 (rather than 20), as long as that structure is a "place of public use." Again, the Commission did not explain—at least not in terms of policy—its decision to ratchet up the penalties for a fire that didn't even endanger, much less cause the loss of, human life. *See* 68 Fed. Reg. 26960, 26971. But it did explain it was extending this 24-level enhancement to "places of public use" in order to track the prohibitions of 18 U.S.C. § 2332a. *Id.* Of course, § 2332a, which criminalizes terrorist attacks on "places of public use," only criminalizes such arson-like attacks when they involve the use of "weapons of mass destruction." That is, the guideline was extended to cover the destruction of public-place structures to be sure to capture crimes involving weapons of mass destruction, not those involving just an ordinary fire.

5

### 2. This case involved using fire to endanger City Hall, not an attempt to destroy or destruction of it.

The development of § 2K1.4 makes it clear that the base level of 24 was designed for the most serious of crimes, *i.e.,* those that endanger human life or that are otherwise significantly destructive, such as using a weapon of mass destruction to destroy a public place. The Commission has explained that crimes of "malicious mischief" that cause relatively little property damage deserve the lowest offense level, not even triggering an "endangering" of physical property enhancement. Thus, it is clear that where, as here, a crime involves some, although not extensive, property damage, it should be classified as an "endanger" offense, not a "destruction" offense, at least as long as it lacks the hallmarks of an attempt at destruction, such as the use of a weapon of mass destruction or a potent accelerant that would destroy the building.

This view finds support in possibly cases parsing the "destruction" standard under § 2K1.4, *United States v. Holmes*, 646 F.3d 659 (9th Cir. 2011). Writing for the court, Judge Kozinski concluded: "we consider something to have been destroyed if it is rendered incapable of being used for one or more of its principal purposes and can't be restored swiftly and relatively cheaply." *Id.* at 661. The fire at City Hall was not severe enough to satisfy this standard.

*Holmes* goes on to define endanger: "Endangering means putting the property at risk but resulting in no actual damage, *or damage that is less than destruction.*" *Holmes,* 646 F.3d at 662 (italics added). The fire at City Hall caused some damage but was much less than destruction. The cost of repair was much less

than the overall value of the building. Multiple individuals caused damage, but it is unknown the exact extent of damage caused by other protestors, compared to the damage caused by Mr. Somers' actions. In any event, it appears that all of the damage was confined to one floor of the building and was mainly water damage. Because Mr. Somers' conduct is more accurately described as endangering the building than destroying or attempting to destroy it, this Court should find that the Base Offense Level for this offense is 20.

If this Court upholds this objection, the Total Offense Level, after a 3-level reduction for acceptance of responsibility, is 17, and the advisory guideline range is 37-46 months, which produces a range of 60 months due to the operation of the five-year mandatory minimum sentence. U.S.S.G. § 5G1.1(a).

Respectfully submitted,

s/ *R. David Baker*
R. DAVID BAKER
Assistant Federal Public Defender
810 Broadway, Suite 200
Nashville, Tennessee 37203
615-736-5047
David_baker@fd.org

Attorney for Wesley Somers

7

## CERTIFICATE OF SERVICE

  I hereby certify that on February 15, 2022, I electronically filed the foregoing *Position of Defendant Regarding the Presentence Report* with the U.S. District Court Clerk by using the CM/ECF system, which will send a Notice of Electronic Filing to the following: John Benjamin Schrader, Assistant United States Attorney, 110 Ninth Avenue South, Suite A-961, Nashville, Tennessee, 37203; and to Terra Everett, United States Probation Office, 110 Ninth Avenue South, Suite A-725, Nashville, TN 37203.

            s/ *R. David Baker*
            R. DAVID BAKER