IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA ) | |
| ) | |
| ) | No. 3:20-cr-00161-1 |
| v. ) | |
| ) | Judge Trauger |
| ) | |
| WESLEY SOMERS ) | |

**GOVERNMENT'S MEMORANDUM IN AID OF SENTENCING**

The United States, by and through its attorney, the United States Attorney for the Middle District of Tennessee, respectfully files this memorandum to aid the Court in its sentencing determination. In this memorandum, the government provides the factual and procedural background underlying this case, as well as a discussion of the sentencing factors set forth at 18 U.S.C. § 3553(e). On May 30, 2020, the defendant, Wesley SOMERS, gleefully participated in an attempt to burn down City Hall in Nashville following protests related to the death of George Floyd in Minneapolis, Minnesota. For the reasons below, the government recommends that this Court sentence SOMERS to a term of incarceration of 71 months, to be followed by a term of supervised release.

**I.      Factual and Procedural Background**

On the afternoon of May 30, 2020, protesters gathered in downtown Nashville following the death of George Floyd in Minneapolis. After approximately two hours of demonstrations, protest participants, including SOMERS, began marching through various locations in downtown Nashville, passing by the Central Precinct for the Metropolitan Nashville Police Department ("MNPD"), the Nashville Convention Center, and Lower Broadway. At one point during this impromptu march, SOMERS was photographed standing on the hood of a car:



In the evening on May 30, 2020, a number of persons, including SOMERS, gathered in front of Nashville City Hall, also known as the Metro Courthouse or the historic courthouse, which is located at 1 Public Square, Nashville, Tennessee 37201, in the Middle District of Tennessee. City Hall is real property used in interstate and foreign commerce. At that time, persons using various tools, including crowbars and other objects, began smashing the windows of City Hall and spraying graffiti on the City Hall façade. One or more fires were also set inside City Hall at this time.

Numerous video clips and photographs of the destruction at City Hall were posted on social media websites, on the websites for news outlets, and on other Internet sites. SOMERS was quickly identified as a target for federal prosecution, principally on the basis of evidence developed from these video clips and photographs. These videos and photographs capture distinctive tattoos that SOMERS bears on various parts of his body. These videos and photographs also depict SOMERS attempting to set City Hall on fire.

The government has filed two video clips with the Court that depict SOMERS's conduct on May 30. The first of those, identified as "Video Clip Number 1," depicts a crowd of persons

streaming towards the plaza in front of the entrance to the Metro Courthouse. At approximately 1:17 in the video,[1] flames are visible in a window on the west side of the southern façade of the Courthouse. At 1:46, onlookers begin chanting, "Burn that bitch!" At 2:05, SOMERS enters the frame, and can be observed reaching into a Courthouse window. At 2:25, SOMERS can be observed lighting a sign on fire on a windowsill, as the sound of smashing windows echoes around him. SOMERS, in full view of the crowd assembled in front of the Courthouse, places the lighted sign into a window, causing another fire to start inside of the Courthouse itself. Then, at 3:09, with a crowd cheering him on, SOMERS sprays an accelerant into the fire, which quickly causes the fire inside the Courthouse to grow.

After the crowd temporarily retreats from the steps in front of the building, many of those in the crowd return, to continue to observe the conflagration in the Courthouse. SOMERS lingers near a window, eventually stepping onto a concrete riser (at 7:10) and observing the progress of the fire inside. At 9:18, SOMERS's co-defendant, Shelby Ligons, can be observed placing a lighted sign into one of the Courthouse windows. Moments later, at 9:38, SOMERS can be observed placing something into the same window.

The second video, identified as "Video Clip Number 2," also depicts a crowd of persons on the plaza in front of the entrance to the Courthouse. That video captured SOMERS's conduct on May 20 from different angles. At 1:19, SOMERS and an associate can be observed lighting a sign on fire, as a blaze begins to burn in one of the windows of the Courthouse. Moments later, at 1:42, SOMERS places the flaming sign through a smashed Courthouse window, and then uses an

---

[1] Timestamps identified herein reflect the time at which certain events occur in the video clip being described, and are provided here so that the Court and the defense can reference in the video clips the events being described above. These timestamps do not reflect the actual time at which these events occurred.

accelerant to increase the size of the fire. SOMERS lingers on the edge of the fire until at least 10:11, when the crowd ultimately begins to disperse.

These videos—as well as photographs like the ones below—make clear that SOMERS was one of the principal instigators not just in the attempted destruction of the Courthouse, but in the attempt to set it on fire and burn it down:





The government charged SOMERS by complaint with a violation of 18 U.S.C. § 844(i) on June 3, 2021. (Doc. 1.) During a jail call SOMERS placed at 2:01 p.m. that same day, while in the custody of the Davidson County Jail, SOMERS made clear that he reveled in his newfound fame after becoming the face of the attempt to burn down City Hall. On that call, an excerpt of which

4

the government has provided to the Court as "June 3, 2020 Jail Call," SOMERS has the following exchange with a female (identified as "W-1"):

SOMERS: Do what? Go ahead.

W-1: I said, are people treating you OK in there?

SOMERS: Oh yeah. I'm a fucking celeb.

W-1: I mean . . .

SOMERS: I got free commissary already, I got, like people [unintelligible] people threw me some Pop Tarts, they let me eat on their [unintelligible] last night, and then my face came on the TV, on the news, and everybody said, hey, come here, come here, look, everybody was like, aw, hell yeah. And then somebody had, was, uh, had a visit, and, uh, with this girl, on the little thing I was just telling you about . . .

W-1: Yeah

SOMERS: And, uh, he said, hey, hey come here, hey Protest, that's what they're calling me, they're calling me "Protest" now, in here [laughing]. He said, Protest, come here. I was like, what? He said, my girl didn't believe that you were in here with me. He said, come here, show her your tattoo. And he made me show her my Wild Child tattoo [laughing].

SOMERS was indicted on October 14, 2020. (Doc. 22.) SOMERS entered an open plea to the sole count of the indictment on June 29, 2021. (Doc. 62.)

## II. Sentencing Guidelines Range

The Presentence Investigation Report (PSR) calculates SOMERS's final offense level as 21 and his Criminal History Category as IV. Absent a statutory mandatory minimum, SOMERS's guidelines range would be 57 to 71 months of imprisonment. The offense of conviction in this case carries a statutory mandatory minimum term of imprisonment of five years, however. SOMERS's guidelines range is therefore 60 to 71 months of imprisonment. U.S.S.G. § 5G1.1(b).[2]

---

[2] The top of page 22 of the Presentence Report reflects that SOMERS's guidelines range is 60 to 87 months. That appears to be an error. As a paragraph in the middle of page 22 makes clear, SOMERS's guidelines range is in fact 60 to 71 months of imprisonment.

The government has no objections to the guidelines calculations set forth in the February 15, 2022 Revised Presentence Report.

### III. 18 U.S.C. § 3553(a) Factors

In determining the appropriate sentence, the Court must consider the factors outlined in 18 U.S.C. § 3553(a), including, inter alia, the nature and circumstances of the offense, the history and characteristics of the defendant, the need to promote respect for the law, the need to deter the defendant from committing new crimes, the need to deter others from committing crime, the need to protect the public from further crimes of the defendant, the need to provide the defendant with correctional treatment, and the overriding need to provide a just punishment in this case.

The government discusses these factors below.

#### A. Nature and Circumstances of the Offense

Here, the offense to which SOMERS has pled guilty is undoubtedly serious. Protesters exercising their First Amendment rights gathered at a rally on May 30, 2020, to peacefully protest Floyd's murder in Minneapolis and to bring attention to broader concerns regarding instances of police brutality. Tragically, that protest was marred by acts of vandalism, mayhem, and violence, culminating in the attempt by persons in the crowd to burn down City Hall.

SOMERS was no mere bystander to that mayhem. Rather, SOMERS was one of the principal instigators of the violence at City Hall. As video evidence makes clear, SOMERS—who was photographed standing on top of a vehicle well before he joined in the destruction at City Hall—set numerous items on fire and put them inside the Courthouse while the crowd cheered him on. SOMERS also applied an accelerant to the fire, rapidly increasing its size and intensity inside the Courthouse itself. And when he was charged criminally for his conduct, he relished in his

6

notoriety, gleefully relaying in a recorded jail call that fellow inmates had nicknamed him "Protest." This factor must therefore weigh heavily against SOMERS.

### B. History and Characteristics of the Defendant

SOMERS has a serious history of criminal conduct. As reflected in the Revised Presentence Report, SOMERS has convictions for theft of merchandise (in 2016), attempted child neglect of a child eight years old or younger (in 2017), unlawful possession of drug paraphernalia (in 2017), driving under the influence (in 2017), domestic assault (in 2017 and 2018), contempt (in 2017), and possession of a controlled substance (in 2018). The case underlying the 2017 domestic assault conviction includes allegations that SOMERS struck the victim's head repeatedly until she lost consciousness while SOMERS was driving a vehicle that he and the victim were riding in, and that he threatened to kill himself and the victim while driving erratically. And the case underlying the 2018 domestic assault conviction includes allegations that SOMERS threw a drink in the victim's face and also kicked the victim in the face, although SOMERS appears to have denied the latter allegation.

In addition to the convictions above, SOMERS also has arrests not resulting in convictions for unlawful possession of drug paraphernalia (in 2014), failure to appear (in 2014, 2016, and 2017), and driving without a license (in 2015). SOMERS also repeatedly violated the terms of court-ordered supervision. As a result of this criminal conduct, SOMERS has accrued nine criminal history points and is in Criminal History Category IV. This factor must weigh against SOMERS as well.

### C. Need to Promote Respect for the Law

The sentence imposed in this case must promote respect for the law. Here, of course, SOMERS attempted to burn down a courthouse—a physical symbol of law and order. That

7

Case 3:20-cr-00161   Document 104   Filed 02/16/22   Page 7 of 11 PageID #: 1005

conduct is inherently disrespectful of the law. Additionally, as reflected in his Presentence Report, SOMERS has engaged in criminal conduct after having repeatedly been sentenced by courts for the commission of prior crimes. And he has repeatedly violated the terms of court-ordered supervision. All of this conduct demonstrates SOMERS's persistent disrespect for the law and the court, and must weigh against SOMERS as well.

### D. Need to Deter Defendant from Committing New Crimes

The sentence imposed in this case should also be designed to deter SOMERS from committing new crimes. That need is evident in this case, given that SOMERS has continued to accrue criminal convictions and probation violations despite his contacts with the law, and given that the sentences previously imposed on SOMERS have not served to deter him from engaging in additional criminal conduct.

### E. Need to Deter Others from Committing Crime

There is also a significant need in this case for a sentence that will serve as a general deterrent to the public. The government is mindful of the wave of protests that swept the United States in the summer of 2020 in connection with Floyd's murder. Many, if not most, of those protests were peaceful expressions protected under the First Amendment. But events like the attempted arson at City Hall cheapened those protests, drawing attention away from the message of police reform and towards the violent conduct of a subset of protestors. Those in the community who would seek to engage in violent conduct like this must know that they will potentially face criminal charges and incarceration as a result of that conduct.

### F. Need to Protect the Public from Further Crimes of the Defendant

The sentence imposed in this case should also be designed to protect the public from future crimes of the defendant. For the reasons already given, that need is evident here, given SOMERS's

criminal history, which demonstrates that SOMERS has not been deterred from committing new crimes by the previous sentences he has received.

### G.     Need to Provide the Defendant with Correctional Treatment

The sentence imposed in this case should also be designed to provide SOMERS with correctional treatment. It appears from the PSR that SOMERS has a history of mental health issues and drug abuse. SOMERS may therefore benefit from mental health treatment and substance abuse treatment while incarcerated or on supervision.

### H.     Need to Provide a Just Punishment in this Case

The sentence imposed in this case should also reflect the overall need to provide a just punishment for SOMERS in this case. To that end, the sentence ought to reflect the gravity of SOMERS's offense, which includes a lawless and destructive attempt to burn down City Hall; SOMERS's significant criminal history, which includes domestic assault convictions; and the need to provide specific and general deterrence. Imposing a guidelines sentence, furthermore, ensures that SOMERS is punished the same way as similarly situated defendants across the country.

### I.     Restitution

Lastly, the government represents to the Court that undersigned counsel consulted with Metro Legal in advance of this filing, to determine whether a representative of the City of Nashville wished to make a victim impact statement or seek restitution in connection with this offense. Metro Legal declined to make a victim impact statement or to seek the imposition of a restitution amount on SOMERS. The United States likewise declines to seek the imposition of a restitution amount on SOMERS in this case, although the United States suggests that it may be appropriate for the Court to impose a nominal restitution amount on SOMERS here as a component of his punishment for commission of the offense. But undersigned counsel obtained from Metro Legal an estimate of

the cost of repairs to City Hall related to the fire/water damage caused on May 30, 2020. According to that estimate, the cost of repairs due to fire/water damage alone will be approximately $610,094.81. That cost will be borne, of course, by taxpayers in Davidson County.

## IV.     Conclusion

For the reasons above, the government respectfully requests that the Court sentence SOMERS to a term of imprisonment of 71 months. Such a sentence would be appropriate in this case under the factors set forth at 18 U.S.C. § 3553(a).

Respectfully submitted,

MARK H. WILDASIN
United States Attorney


By:     */s/ Ben Schrader*
BEN SCHRADER
Assistant United States Attorney
Middle District of Tennessee

10

Case 3:20-cr-00161   Document 104   Filed 02/16/22   Page 10 of 11 PageID #: 1008

## CERTIFICATE OF SERVICE

I hereby certify that on February 16, 2022, I filed a copy of foregoing using the CM/ECF document filing system, which will automatically send a copy of the filing to David Baker, Esq., counsel for the defendant.

By: */s/ Ben Schrader*
BEN SCHRADER
Assistant United States Attorney